763 So.2d 1151 (2000)
Peter S. KING, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION, and Old Park Investment, Inc., Appellees.
No. 99-1580.
District Court of Appeal of Florida, Fourth District.
January 19, 2000.
*1152 Lorraine A. Smith, Fort Pierce, for appellant.
Judy L. Harrelson, Tallahassee, for Appellee-Florida Unemployment Appeals Commission.
PER CURIAM.
Peter King was denied unemployment benefits after the appeals referee found that he voluntarily quit his job for personal reasons not attributable to his former employer. King seeks review of the Unemployment Appeals Commission ("UAC") order affirming the appeals referee. We affirm.
King worked as a part-time dock attendant for Harbortown Marina from June 20, 1997 to May 16, 1998. He did not work a set schedule, but usually worked several days a week. In March 1998, King informed his employer that he wanted to travel to the United Kingdom and would be gone for almost a month. His general manager commented that it sounded like a nice trip. King did not consult the dockmaster, his immediate supervisor, because the general manager said that she would do so. King assumed his leave had been approved and proceeded with the trip on May 18, 1998.
After returning from overseas, King contacted his employer on June 18, 1998. He was told that there was no work for him.
Before the appeals referee, there was disputed testimony as to whether King's employer informed him that his proposed leave of absence was not acceptable. The dockmaster testified that he told King prior to his trip that the proposed leave of absence was not approved. King denied that any such conversation took place. The appeals referee resolved the conflict by finding that King's employer did not tell him that his leave was acceptable to the employer.
The referee found that King voluntarily quit work for personal reasons not attributable to the employer, stating in his conclusions of law:
The facts in this case show ... that [King] was never told that the time off was approved. An appreciative comment about one's plans for a vacation is not the same as approval of leave. Because the claimant stopped working without approval for leave, he is considered to have initiated the separation from employment. It has not been shown that the employer violated any agreement of hire or imposed unreasonable conditions on the claimant. Accordingly, it is concluded that the claimant voluntarily quit work for sound personal reasons, but not for any good cause attributable to the employer, *1153 within the meaning of the unemployment compensation law.
As this court stated in Maynard v. Florida Unemployment Appeals Commission, 609 So.2d 143, 145 (Fla. 4th DCA 1992):
While an agency may reject conclusions of law without limitation, neither an administrative agency nor a reviewing court may reject an administrative hearing officer's findings of fact, as long as those findings are supported by competent, substantial evidence in the record.
(Citations omitted). Hence, the referee's finding that King's employer never informed him that his leave had been approved is entitled to great deference. See Heifetz v. Dep't of Bus. Regulation, 475 So.2d 1277 (Fla. 1st DCA 1985).
Section 443.101(1)(a), Florida Statutes (1999), provides that a claimant who has voluntarily left work without good cause shall be disqualified from receiving benefits. The statute defines "good cause" as "only such cause as is attributable to the employing unit or which consists of illness or disability of the individual requiring separation from his or her work." § 443.101(1)(a)1., Fla. Stat. (1999).
The cases of Goodman v. Engle Homes, Inc., 621 So.2d 523 (Fla. 4th DCA 1993), Foote v. Unemployment Appeals Commission, 659 So.2d 1232 (Fla. 5th DCA 1995), and Keays v. State of Florida Unemployment Appeals Commission, 592 So.2d 1255 (Fla. 2d DCA 1992), wherein the appellate courts reversed the UAC's denials of benefits, are distinguishable from the instant case.
In Goodman, the claimant had discussions with her employer regarding a leave of absence she would take after her marriage. The employer promised the claimant re-employment beginning "the next fall season." This court disagreed with the UAC's determination that a bona fide leave of absence "requires that the employer and employee agree upon a specific term for the leave." 621 So.2d at 524. In reversing the UAC's denial of benefits, this court stated:
"Where an employer fails to notify its employee that absence from employment is not acceptable and such failure leads the employee to believe that the leave of absence is excused, the absence of the employee cannot support a finding that the employee voluntarily left his/her employment."
Id. (quoting Meyers v. Quality Extruded Products, Inc., 611 So.2d 54, 55 (Fla. 3d DCA 1992)). Because the employer failed to inform the claimant "of the acceptable terms of the leave of absence," the court held that her absence could not be interpreted as voluntarily leaving her employment. Id. at 525.
In Foote, the claimant took a three-day absence from his job to attend to a legitimate family emergency. In reversing the UAC's denial of benefits, the fifth district found that the claimant's absence did not constitute misconduct:
Had Foote defied his employer's orders by being absent for a family emergency, this outcome might be different. However here, Foote made diligent efforts to contact his supervisors and to keep them apprised of his situation. It was undisputed that no one indicated to Foote that his three days off for a family emergency constituted a problem. In fact, Foote was told that someone could be brought in to cover for him if need be and that he could take a whole week off if necessary. Under these circumstances, Foote's absences should not constitute misconduct.
659 So.2d at 1233-34. (Citations omitted).
In Keays, the claimant called in sick to work and informed her employer that she needed a leave of absence "to attend to some family problems out of town." 592 So.2d at 1256. Her employer indicated that her absence was acceptable. The claimant said she would call the employer upon her return. One week later, the claimant telephoned her employer and was *1154 informed that she had been replaced. In reversing the UAC's denial of benefits, the second district found that when the claimant was terminated, she was taking care of a family emergency and "in situations such as this, the claimant should be notified that continued absence is unacceptable, and the employee should be given a choice of termination or of returning to work." Id. (citations omitted).
The Keays court noted that the facts before it differed from those in Nofrio v. Department of Labor and Employment Security, 442 So.2d 268 (Fla. 2d DCA 1983), where the employee informed her employer about her planned several-month-long vacation "and she left with no specific understanding that her job would remain open." 592 So.2d at 1256. Under such circumstances, the duty that normally falls on the employer to communicate to the employee that a proposed leave of absence is unacceptable shifts to the employee such that the employee must make sure the leave is acceptable. See id.
In the instant case, King was absent from work for approximately one month to travel overseas for a wedding and to see one of his wife's close friends. King informed the general manager that he had a "slight problem" to see about in the United Kingdom. This clearly did not amount to a family emergency as found in Foote.
Unlike the claimant in Foote, who only missed three days of work, King's absence lasted almost a month. Also unlike Foote, King was never told that someone could cover for him if necessary during his absence. Unlike the claimant in Goodman, King and his employer never agreed to a leave of absence; King merely assumed that he had been approved for time off.
The facts of this case are more analogous to Nofrio, where the second district held:
an employee who informs her employer that she will be taking a vacation trip of several months duration, without an explicit understanding and assurance that her job will remain open, can be said to have voluntarily left her job without good cause and is not entitled to unemployment benefits.
442 So.2d at 269. Like the claimant in Nofrio, King left for his trip to the United Kingdom "without an explicit understanding and assurance that h[is] job [would] remain open." Cf. Rodriguez v. Arby's Inc., 709 So.2d 632 (Fla. 2d DCA 1998) (reversing denial of benefits where claimant left work on an approved disability leave).
The record supports the referee's determination that King "voluntarily left his ... work without good cause attributable to his ... employing unit." § 443.101(1)(a), Fla. Stat. (1999).
AFFIRMED.
STEVENSON, GROSS, JJ., and BAILEY, JENNIFER D., Associate Judge, concur.